### Bowser & Lemmon v. W. B. Cole.

#### No. 6074.

1.   **Alteration of Mortgage.**—The alteration of a mortgage after its execution by the insertion therein of additional property to secure the debt for which it was given, without the consent of the mortgagor and while in possession of the holder or of his agent, has the effect of destroying the validity of the instrument even as to the property included at its execution.

2.   **Presumption.**—Where a party claiming under an alleged altered instrument has been in possession of it, it affords a presumption that the alteration was made by him, and it devolves on him to show that he was not privy to the alteration.

APPEAL from Collin.   Tried below before Hon. Richard Maltbie. The opinion states the case.

*E. T. Brown* and *Mathews & Neyland,* for appellants. — 1.   An alteration made by a stranger to the mortgage, without the procurement or connivance of either party thereto, does not affect the right of either if the original tenor of the mortgage can be ascertained.   Hunt v. Gray, 35 N. J. L., 227; Bigelow v. Stephens, 35 Vt., 521; Nichols v. Johnson, 10

Conn., 193; Boyd v. McConnell, 10 Humph., 98; Craft v. White, 36 Miss., 455; Lubbering v. Kohlbrecher, 22 Mo., 596; Marcy v. Dunlop, 5 Lans., 365; Henfree v. Bromley, 6 East, 309.

2.  It is necessary in order to bind a mortgagee for the alteration of a mortgage after its execution to plead and prove that the alteration was made by him or with his knowledge or consent, or that after a full knowledge of the alteration having been made he assumed the act or ratified it. The pleading in this cause on the part of defendant not alleging any of the above facts, plaintiffs' demurrer should have been sustained. Craft v. White, 36 Miss., 455; Bridges v. Winters, 42 Miss., 135.

3.  An alteration made by an agent employed by the mortgagee to sell goods and to take notes and security therefor and transmit same to his employers is not an agent of his principal to alter a note or mortgage securing same so received by him, and an alteration so made will not render the original instrument void nor a sale thereunder void if it conveys the power of sale, but such sale will pass title to all property originally mortgaged if the same can be ascertained with sufficient certainty to identify what was originally embraced in the mortgage.

4.  If a mortgage is in fact changed by the addition of other property belonging to the mortgagor by one not authorized so to do, and the mortgagor stands by and sees the property sold and makes no objection to the sale of the property originally by him in fact mortgaged, but tacitly consents to said sale, he can not afterwards deny the validity of the mortgage as to such property actually mortgaged by him. Crunstead v. Briggs, 4 Ia., 559; King v. Hunt, 13 Mo., 97; Pelton v. Prescott, 13 Ia., 567; Humphrey v. Guilbon, 13 N. H., 385.

*Garnett & Muse*, for appellee, cited Park v. Glover, 23 Texas, 472; Bogarth v. Breedlove, 39 Texas, 563; Harper v. Stroud, 41 Texas, 371; Wood v. Steele, 6 Wall., 81; Angle v. N. W. Ins. Co., 2 Otto, 330–342; 1 Add. on Con., 3 Am. ed., sec. 388; 1 Greenl. Ev., 12 ed., sec. 565; Holland v. Hatch, 11 Ind., 497; Glover v. Robbins, 49 Ala., 219; Fay v. Smith, 1 Allen, 477; Toomers v. Rutland, 57 Ala., 379; Knoxville Bank v. Clark, 51 Ia., 264; Jones v. Bangs, 40 Ohio St., 139.

HOBBY, JUDGE.—The questions raised by the assignments in this case are, whether the alteration of a mortgage after its execution and delivery to the mortgagee by the insertion therein of additional property to secure the debt for which it was executed without the knowledge or consent of the mortgagor and while in the possession of the holder invalidates the instrument; and whether, after the fact of the alteration is brought to the knowledge of the mortgagee by the mortgagor, a sale of the property originally mortgaged as well as that interpolated will pass the title to any of the property.

A distinction seems to have been drawn between the cases of an alteration in a material respect of an instrument after its execution, by a stranger, without the knowledge or consent of either party thereto, and those cases where such alteration is made by a party to it.

In the present case, however, it is unnecessary to inquire into the effect of an alteration by one not a party—the facts refuting the idea that the alteration was made by a stranger, and rendering such an inquiry therefore irrelevant.

The evidence was uncontroverted that Blassingame was appellants' fully authorized agent to sell engines and machinery, prepare and accept mortgages, and to secure the payment of the purchase money therefor, as he did in the present case. The circumstances attending the execution of the mortgage by appellee were detailed at length by the witnesses, and the great weight of the testimony was to the effect that the only property embraced in the mortgage was the engine and machinery, and that the appellee refused to include the cattle and mules. The mortgage was delivered to Blassingame by appellee, and as shown by the evidence was in his possession, for appellants exclusively, from its delivery until its deposit by him for registry in the clerk's office of Collin County. Appellant Lemmon, in March, 1884, obtained a copy of it from the clerk and exhibited it to appellee, who immediately informed him that the twenty-five head of cattle and two mules had been inserted after its execution and without his knowledge or consent, and that it was not the mortgage he had executed.

Notwithstanding this information and the repudiation of the mortgage by Cole, appellants proceeded to sell all of the property under the terms of the mortgage, and purchased the same for $100, which was shown to be worth not less than $3000, including the cattle and mules, and in July, 1884, levied the writ of sequestration upon the entire property.

The fact is disclosed by the record that appellant Lemmon was present during the trial, but did not testify.

Where a party claiming under an alleged altered instrument has been in possession of it, it affords a presumption that the alteration was made by him, and it devolves on him to show that he was not privy to it. 1 Smith's Lead. Cases, note to Master v. Miller, p. 816, and cases cited.

The facts in this case clearly show that Blassingame was the agent of appellants; that as such he was in possession of the mortgage, and they authorized the conclusion that the alteration was made while it was in his possession, even if the conduct of appellant Lemmon was not sufficient (after it was brought to his knowledge that the alteration had been made) to amount to an endorsement or ratification of the alteration.

Discussing the question of a fraudulent alteration of an instrument, in Wood v. Steele, 6 Wallace, 81, it is said: "As far back as the reign

of Edward III it was a rule of the common law that a rasure in a deed avoids it.

"In 1 Smith's Leading Cases, *supra,* the subject is elaborately examined with reference to commercial paper, and the rule applied to that class of securities as well as to deeds.

"In English and American jurisprudence it is now well settled that a material alteration in any commercial paper without the consent of the party charged extinguishes his liability. The reason is obvious. The agreement is no longer the one into which the defendant entered. Its identity is changed, another is substituted without his consent and by one who had no authority from him.

"To prevent and punish such tampering the law does not permit the plaintiff to fall back upon the contract as it originally was, but its stern and wise policy annuls it as to the party sought to be wronged."

With us the doctrine is recognized that "any alteration which makes the instrument speak a different language in effect from that which it originally expressed destroys its identity and its legal virtue, for it is no longer the agreement the party undertook to perform." Miller v. Alexander, 13 Texas, 505; Bogarth v. Breedlove, 39 Texas, 564.

In Parker v. Glover, 23 Texas, 469, it is held "that the principle is established by the authorities that an instrument fraudulently altered in a material part is thereby rendered void and will not support an action."

Applying the doctrine announced in the cases above cited to this case the alteration rendered the instrument void. The evidence in the record before us, we think, was sufficient to support the conclusion that the mortgage was in a material respect altered subsequent to its execution and delivery by appellee to appellants, and that it was done without his knowledge or consent. That it was so altered while in the possession of appellants' agent, who was shown to be authorized by them to write, accept, and retain possession of the same. That appellants, although advised of this alteration by appellee, claimed under the mortgage, and acted upon it in its altered state, assenting to and recognizing the acts of their agent in connection with it. That it is also shown that the alteration operated to change its identity and render it void. The plaintiffs' action in this case was upon the mortgage in its altered condition and which was shown to be void; and if the effect of the alteration was not to invalidate that part of it relating to the engine and appliances there could be no recovery for the reason that the suit was not so brought. There were no allegations seeking to recover upon the mortgage as originally executed, but the issue was directly made by the pleadings, on the one hand charging the instrument to be a forgery and void, not the act and deed of the defendant, and on the other affirmatively alleging that the mortgage sued on was as executed by the defendant and valid. Such being the state of the pleadings, under the authorities cited, the instrument having been shown to be void,

its identity changed by reason of its alteration in a material part, no action could be maintained upon it.

The question discussed necessarily disposes of all the assignments presented.

We think there is no error in the judgment and that it should be affirmed.

*Affirmed.*

Adopted June 4, 1889.